1
2
3
4
5
6

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

7   ROBERT HAYS, et al.,                        )
8                              Plaintiffs,      )        Case No. 2:07-cv-01395-LDG-PAL
9   vs.                                         )                    **ORDER**
10  CLARK COUNTY NEVADA, et al.,                )              (M/in Limine - #84)
11                             Defendants.       )              (M/in Limine - #85)
12  _____ )

13          The court conducted a hearing on May 15, 2008 on Clark County's Motion in Limine to

14  Preclude Reference to March 22, 2007 Order on Petition for Writ of Habeas Corpus (#84), and

15  Defendants Philip Kohn and Morgan Harris' Motion in Limine to Preclude Use of March 22, 2007

16  Order on Petition for Writ of Habeas Corpus (and Joinder in Clark County's Motion in Limine) (#85).

17  Defendants Moreo, Clark County, Rene McClymont Butts, and Gary Jacobsen filed joinders in both

18  motions (##86, 87, 88, 89, 90, 91).  The court has considered the motion and joinders, plaintiffs'

19  Opposition (#94), defendant Clark County's Reply (#95), and defendants' Kohn and Harris' Reply

20  (#96), as well as the arguments of counsel at the time of the hearing.  Joel Z. Schwarz, Christopher B.

21  Mears, and Dominic P. Gentile appeared on behalf of plaintiffs.  Lyssa Anderson, Robert J. Gower,

22  Thomas D. Beatty, Lynn M. Hansen, Walter R. Cannon, and Tom Dillard appeared on behalf of the

23  defendants.

24                              **BACKGROUND**

25          The complaint in this case was filed on October 18, 2007 and asserts claims for deprivation of

26  plaintiffs' constitutional rights under 42 U.S.C. § 1983, conspiracy to interfere with civil rights in

27  violation of 42 U.S.C. §§ 1985(2), (3), and a state malicious prosecution claim.  The claims arise out of

28  plaintiff Robert Hays' March 1993 convictions following a jury trial in Nevada state court on four

counts of sexual assault of a minor under the age of fourteen years and four counts of lewdness with a minor involving allegations he sexually abused his then eight-year-old daughter, Jennifer Hays.  After years of unsuccessfully litigating his convictions in state court, he filed a petition for writ of habeas corpus in this court, case number 3:04-cv-00011-RLH-VPC.  Chief Judge Hunt reviewed the moving and responsive papers and conducted evidentiary hearings on October 19, 2006 and March 6, 2007 and entered an Order (#86) finding that Hays was factually innocent.  Chief Judge Hunt also found *inter alia* that Hays had demonstrated by clear and convincing evidence that he was entitled to habeas corpus relief as a result of constitutional errors in his criminal trial.  Specifically, Chief Judge Hunt found that Hays was convicted on insufficient evidence, that his motions for a new trial on the basis of the victim's recantation were improperly denied, that his due process rights were denied by the actions of the prosecutor, that his Sixth Amendment rights were denied by the deficient performance of his own attorney, and that his double jeopardy rights were violated.  Chief Judge Hunt granted his petition for writ of habeas corpus unconditionally, and ordered Hays' immediate release from custody.  Chief Judge Hunt's Order (#86) was entered March 22, 2007 and plaintiff Robert Hays was released from custody. The Clerk of the Court entered a Judgment on the court's decision (#87) on March 23, 2007.  The respondents did not appeal the order or judgment, and the defendants concede, as they must, that it is a final judgment.

Hays alleges in this lawsuit that he was wrongfully arrested, convicted, and sentenced to prison, and seeks monetary damages for the fourteen years he spent in prison prior to his release.  Plaintiffs Jennifer Hays, Christina Hays, Robert Hays, III, Kimberly Hays, and Melissa Hays are the children of plaintiff Robert Hays who assert they were wrongfully deprived of the care and companionship of their father and that they were forced to endure economic hardship and social stigma resulting from their father's conviction and incarceration.  Plaintiff Jennifer Hays asserts she was forced to undergo invasive physical examination and provided false testimony against her father under the threat of being returned to the custody of her abusive and neglectful mother.  The plaintiff children seek monetary damages for economic and psychological harm suffered as a result of their father's arrest, conviction, and incarceration.

/ / /

2

1    The parties hotly dispute whether Chief Judge Hunt's May 22, 2007 order granting Hays'

2    petition for writ of habeas corpus has collateral estoppel or *res judicata* effect in this case. Counsel for

3    the parties stipulated that an early determination of the applicability or inapplicability of Chief Judge

4    Hunt's March 22, 2007 order would greatly affect the nature and extent of discovery required to litigate

5    the claims in this case, and, therefore, requested an expedited decision from the court.

6    **The Parties' Positions**

7    **1.    The Defendants' Arguments**

8    Defendant Clark County concedes that the plaintiffs should be permitted to adduce evidence that

9    plaintiff Robert Hays' conviction was invalidated by Chief Judge Hunt's order granting a writ of habeas

10   corpus. However, Clark County argues that the court should enter a decision and order (1) finding that

11   Chief Judge Hunt's March 22, 2007 order has no collateral estoppel effect in this case, and

12   (2) precluding the plaintiffs from citing, quoting, or otherwise referring to it in discovery, during

13   depositions and/or at trial. Clark County asserts that the party seeking to assert collateral estoppel has

14   the burden of pleading and proving its application, and that plaintiffs cannot meet the Ninth Circuit's

15   three-step test for applying collateral estoppel principles in this case. Specifically, counsel for Clark

16   County argues that Chief Judge Hunt's March 22, 2007 order may not be given non-mutual collateral

17   estoppel effect because the scope of issues litigated in the habeas corpus petition are not identical to

18   issues in this case, and because some of the language the plaintiffs will attempt to rely upon is mere

19   dicta. Other issues, such as the defense of qualified immunity, were not addressed, and plaintiffs'

20   damages for emotional distress were not at issue in the habeas corpus action. Additionally, counsel for

21   Clark County argues that the defendants named in this civil lawsuit did not have a full and fair

22   opportunity to litigate the issues raised in the habeas litigation, which was defended by the State

23   Attorney General's Office on behalf of the defendants having custody of the petitioner, Mr. Hays.

24   Neither the Attorney General's Office nor the State of Nevada are parties to this civil action and

25   Clark County argues that none of the defendants in this action share a sufficient commonality of

26   interests with the defendants in the habeas corpus petition that they may be considered in privity for

27   purposes of applying collateral estoppel principles. Clark County points out that none of the individual

28   defendants named in this action were employed by the State of Nevada and that the county and state are

3

separate legal entities.  Additionally, Clark County argues that none of the individual defendants had the right to control the habeas corpus litigation, or conduct discovery concerning the acts and omissions which were alleged to have violated Mr. Hays' constitutional rights in the habeas corpus action.  Clark County contends that applying principles of collateral estoppel to the individual defendants in this action would deprive them of their due process rights.  Finally, counsel for Clark County argues that if the court concludes that some parties should be collaterally estopped, while others should not, it would be "unjust and inequitable to apply estoppel to any of the parties" because the interests of judicial economy would not be served.  Clark County, therefore, urges the court to enter an order precluding the plaintiffs from using or referring to Chief Judge Hunt's May 22, 2007 order in discovery, motion practice and/or trial.

Defendants Kohn and Harris joined in the motion in limine filed by Clark County and also ask for an order precluding admission or use of Chief Judge Hunt's March 22, 2007 order "as evidence on any issue of fact and for any issue preclusion in this case against the moving Defendants."  Defendant Kohn is the current Clark County Public Defender.  Defendant Morgan Harris was the Clark County Public Defender at the time of Hays' conviction in 1993.  Kohn and Harris argue Chief Judge Hunt's rulings and findings in his order granting the writ of habeas corpus have no legal or factual effect on this civil litigation, and cannot have either offensive collateral estoppel or *res judicata* effect in this case for several reasons.  First, Kohn and Harris argue that they were neither parties to nor in privity with a party to the habeas corpus proceeding and did not have a full and fair opportunity to litigate issues raised in that proceeding.  The parties to the habeas corpus proceedings were the plaintiff, Robert Hays as petitioner, and the respondents – the warden of the prison where Hays was incarcerated, and Director of the Nevada Department of Corrections, who were represented by the Nevada State Attorney General's Office.

Kohn and Harris also argue that there are factual inaccuracies in the order granting the petition for writ of habeas corpus which are the direct result the inability of the individual defendants named in this action to fully and fairly litigate Hays' claims that his constitutional rights were violated.  These defendants reiterate arguments raised by Clark County that they were neither a party to nor in privity with the respondents in the habeas corpus proceeding, that they had no control over that proceeding,

4

1    and had no direct or individual personal interest in the outcome.  These defendants, therefore, argue that

2    the order granting the habeas corpus petition cannot be used in evidence in this case, or for precluding

3    any issue of fact or law in this civil action for damages against these individual defendants.

4           **2.      The Plaintiffs' Arguments**

5           Plaintiffs vigorously oppose the defendants' motions, asserting Chief Judge Hunt's

6    determination that Hays is actually and factually innocent should be respected, and Hays should not be

7    required to re-prove issues of fact and law decided by Chief Judge Hunt in the habeas corpus

8    proceeding.  The plaintiffs emphasize that Chief Judge Hunt considered the moving and responsive

9    papers and exhibits which included the entire criminal trial transcript and post-trial motions and appeal,

10   and conducted two evidentiary hearings before making his findings and entering his order

11   unconditionally releasing Hays.  Chief Judge Hunt heard testimony from Jennifer Hays, and her mother

12   Karen Hays-Stewman, and Detective Jacobsen of the Las Vegas Metropolitan Police Department

13   ("LVMPD").  He also received the deposition testimony of Drew Christiansen, Hays' deputy public

14   defender at the criminal trial, and Thomas Moreo, the prosecutor.  Plaintiffs argue that Chief Judge

15   Hunt's order is "irrefutable evidence of Hays' actual innocence . . . and provides a full and complete

16   foundation for offensive collateral estoppel to be applied to the constitutional issues" raised in

17   plaintiffs' amended complaint.  (Opposition (#94), 8:25-28.)

18          Plaintiffs argue, in the alternative, that if the defendants prevail on their collateral estoppel

19   arguments, plaintiffs should not be precluded from making reference to the order in its entirety.

20   Plaintiffs point out that pursuant to the holding of Heck v. Humphrey, 512 U.S. 477, 486-487 (1994),

21   they must prove that Hays' conviction or sentence has been called into question by the issuance of a

22   writ of habeas corpus.  Plaintiffs cite several federal cases for the proposition the court should not

23   exclude evidence on a motion in limine unless the evidence is "clearly inadmissible on all potential

24   grounds."  United States v. Ozsusamlar, 428 F. Supp.2d 161, 164 (S.D.N.Y. 2006).

25          Plaintiffs also urge the court to consider the risk of prejudice to both plaintiffs and defendants if

26   the order is stricken for all purposes from evidence in this case.  If plaintiffs are precluded from using

27   the order as evidence at trial, they will be forced to convince another trier of fact that Hays was

28   factually innocent and that his constitutional rights were violated.  The defendants should, therefore, be

1    collaterally estopped from relitigating substantially similar issues decided by Chief Judge Hunt's order.

2    Specifically, plaintiffs argue defendants should be collaterally estopped from litigating that Hays: (1) is

3    factually innocent of the charges; (2) was deprived of his due process rights under the Fifth and

4    Fourteenth Amendments by Moreo and Jacobsen; (3) was deprived of his Sixth Amendment rights and

5    received ineffective assistance of counsel, due in part to a standard practice or policy of the Public

6    Defender's Office; and (4) was deprived of his due process rights through a number of constitutional

7    errors in the criminal proceeding.  Because defendants Harris and Kohn have conceded that Hays'

8    previous convictions are void, plaintiffs argue that at a minimum, the court should find that defendants

9    are collaterally estopped from raising Hays' actual and factual innocence.

10          Plaintiffs point out that there are important differences between the doctrines of collateral

11   estoppel and *res judicata*, and argue that the defendants have confused the distinction in their moving

12   papers.  *Res judicata* bars entire claims from being relitigated.  Collateral estoppel is a narrower

13   principle and precludes relitigation of issues of fact or law.  Plaintiffs seek to apply the doctrine of

14   offensive collateral estoppel to preclude the defendants in this case from relitigating issues of fact and

15   law decided by Chief Judge Hunt's order.  Plaintiffs cite <u>Kamilche Co. v. United States</u>, 53 F.3d 1059,

16   1062, adopting the Restatement (Second) of Judgments' four-prong test for application of the doctrine

17   of collateral estoppel.  Plaintiffs assert offensive collateral estoppel should apply to Chief Judge Hunt's

18   order in this civil case because the issues in this case are sufficiently identical to the issues that were

19   fully and fairly litigated by a party in privity with the defendants in the habeas proceeding.  Plaintiffs

20   emphasize that Hays was required to prove his habeas claims by clear and convincing evidence, and

21   that he is only required to prove his civil claims in this action by a preponderance of the evidence.  The

22   issues in this civil action substantially overlap the evidence and arguments raised in the habeas

23   proceeding and involve the application of the same rule of law.  Plaintiffs also assert that pretrial

24   preparation and discovery related to the habeas proceeding could reasonably be expected to apply to this

25   civil action, and that the claims in both proceedings are related.

26          Plaintiffs acknowledge that a determination of whether collateral estoppel applies does not turn

27   on whether the relief sought in this 1983 action was available in the habeas petition, and that "what

28   matters is that there was a full opportunity to litigate identical issues."  (Opposition (#94), 16:22-24.)

1   Plaintiffs also point out that Chief Judge Hunt's order was not appealed, and is, therefore, a final

2   judgment.  Plaintiffs contend the habeas proceeding was extensively and vigorously defended by the

3   Attorney General's Office who had strong incentive to defend the individual defendants' interests in

4   this case.  Plaintiffs insist that the habeas proceeding was fully, fairly and thoroughly conducted and

5   that the parties in this civil suit were afforded a complete opportunity to participate, to retain their own

6   counsel, and were represented by the Nevada State Attorney General's Office.  Thus, the individual

7   defendants in this case should be precluded from relitigating issues Chief Judge Hunt has already

8   decided because they were sufficiently in privity with the respondents in the habeas corpus proceeding.

9   Plaintiffs emphasize that the Ninth Circuit's privity standard has evolved and that full mutuality

10  of parties is no longer required for the doctrine of collateral estoppel to apply.  The court should,

11  therefore, balance the rights of the plaintiffs against the rights of the defendants in this case to prevent a

12  possible inconsistent judgment which would undermine the integrity of the judicial system.  Although

13  the individual defendants in this case may not have been represented by counsel in the habeas

14  proceedings, plaintiffs argue they knew or should have known that if Hays' conviction was overturned,

15  they would be sued for violation of his constitutional rights.  Plaintiffs opine that defendants may have

16  not retained counsel because they relied on the State of Nevada to defend their interests, and recognized

17  that their interests were sufficiently aligned.  Thus, it is fair to preclude them from relitigating identical

18  issues Chief Judge Hunt decided in the habeas corpus proceeding.  The plaintiffs, therefore, ask the

19  court to collaterally estop the defendants from relitigating the four substantially similar issues identified

20  *infra* in the interests of judicial economy and to avoid vexatious litigation.  At a minimum, plaintiffs

21  ask the court to deny defendants' motions to preclude them from even referring to Chief Judge Hunt's

22  order.

23  _____**3.      The Defendants' Replies**

24  Clark County clarifies in its reply brief that it does not contest the fact that Chief Judge Hunt's

25  habeas corpus order was entered, or that its net effect was to invalidate Hays' conviction.  Rather, Clark

26  County seeks to preclude the plaintiffs from using the language of the order and the conclusions

27  reached which are at issue in this civil case.  Clark County argues that the plaintiffs will not be

28  prejudiced by having to actually litigate their claims because if they prevail, 42 U.S.C. § 1988 allows

1   for an award of reasonable attorneys fees and costs incurred.  Clark County reiterates its arguments that

2   the doctrine of collateral estoppel does not apply to this civil case because the issues adjudicated in the

3   habeas corpus proceeding are not factually identical to the issues involved in this case, and the matters

4   litigated in the habeas corpus proceeding were not fully and fairly litigated by parties in privity.  Clark

5   County asserts that the constitutional issues decided in the habeas corpus proceeding are only

6   "tangentially related" to the constitutional issues to be litigated in this case, and that these defendants

7   did not have a full and fair opportunity to be heard "on the matter."  Clark County emphasizes that the

8   individual defendants were not represented by counsel, did not have the opportunity to conduct

9   discovery, and could not compel testimony from plaintiff Robert Hays.  Clark County also suggests that

10  the State Attorney General's Office had "little incentive" to litigate "these matters."  In a footnote,

11  counsel for Clark County argues that none of the issues the plaintiffs identify in their opposition as to

12  which collateral estoppel should apply were necessary to Chief Judge Hunt's decision and order in the

13  habeas corpus proceeding.  Rather, Clark County argues the issue considered in the habeas corpus case

14  was "restricted to whether sufficient evidence existed to warrant the conviction" and that none of the

15  issues as to which plaintiffs seek to apply the doctrine of collateral estoppel were necessary to reach

16  Chief Judge Hunt's conclusions and order.

17          Kohn and Harris reply that application of the doctrine of offensive collateral estoppel would

18  violate the individual defendants' due process rights because they were neither parties to the habeas

19  corpus proceeding, nor adequately represented.  Kohn and Harris acknowledge that the modern concept

20  of privity has expanded and that collateral estoppel may be applied in some circumstances in the

21  absence of full identity of parties.  However, Kohn and Harris point out that none of the individual

22  defendants are employees of the State of Nevada, and that the Nevada Attorney General was

23  representing the prison system and warden in the habeas corpus proceeding.  Kohn and Harris assert the

24  habeas corpus proceeding and this civil lawsuit are two different cases involving two different sets of

25  defendants with different incentives to litigate and completely different legal representation.  The

26  individual defendants in this case lack a sufficiently close relationship to the State defendants to justify

27  a finding of privity.  Thus, the doctrine of collateral estoppel cannot be applied to prevent the individual

28  / / /

1 | defendants in this case from relitigating issues decided by Chief Judge Hunt in the habeas corpus
2 | proceeding.

3 | **DISCUSSION**

4 |     **A.**    **Motions in Limine**

5 | A motion in limine is a procedural device to obtain an early and preliminary ruling on the
6 | admissibility of evidence.  Black's Law Dictionary defines it as "[a] pretrial request that certain
7 | inadmissible evidence not be referred to or offered at trial.  Typically, a party makes this motion when it
8 | believes that mere mention of the evidence during trial would be highly prejudicial and could not be
9 | remedied by an instruction to disregard. . . . "  Black's Law Dictionary, 1038-39 (8th ed. 2004).
10 | Although the Federal Rules of Evidence do not explicitly authorize a motion in limine, the Supreme
11 | Court has held that trial judges are authorized to rule on motions in limine pursuant to their authority to
12 | manage trials.  Luce v. United States, 469 U.S. 38, 41 n.4 (1984).

13 | A motion in limine is a request for the court's guidance concerning an evidentiary question.
14 | Wilson v. Williams, 182 F.3d 562, 570 (7th Cir. 1999).  Judges have broad discretion when ruling on
15 | motions in limine.  Jenkins v. Chrysler Motors Corp., 316 F.3d 663, 664 (7th Cir. 2002).  However, a
16 | motion in limine should not be used to resolve factual disputes or weigh evidence.  C & E Services,
17 | Inc., v. Ashland Inc., 539 F. Supp. 2d 316, 323 (D.D.C. 2008).  To exclude evidence on a motion in
18 | limine "the evidence must be inadmissible on all potential grounds."  Ind. Ins. Co. v. Gen. Elec.Co.,
19 | 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004); Kiswani v. Phoenix Sec. Agency, Inc., 247 F.R.D. 554
20 | (N.D. Ill. 2008); Wilkins v. K-Mart Corp., 487 F. Supp. 2d 1216, 1218-19 (D. Kan. 2007); Allen v. City
21 | of N.Y., 466 F. Supp. 2d 545, 548 (S.D.N.Y. 2006).  "Unless evidence meets this high standard,
22 | evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential
23 | prejudice may be resolved in proper context."  Hawthorne Partners v. AT&T Tech, Inc., 831 F. Supp.
24 | 1398, 1400 (N.D. Ill. 1993).  This is because although rulings on motions in limine may save "time,
25 | costs, effort and preparation, a court is almost always better situated during the actual trial to assess the
26 | value and utility of evidence."  Wilkins, 487 F. Supp.2d at 1219.

27 | It is well established that a district court's ruling on a motion in limine "is subject to change
28 | when the case unfolds, particularly if the actual testimony differs from what was contained in the . . .

9

1   proffer." Luce, 469 U.S. at 41; Command Cinema Corp. v. VCA Labs, Inc., 464 F. Supp. 2d 191, 200

2   (S.D.N.Y. 2006).  "Denial of a motion in limine does not necessarily mean that all evidence

3   contemplated by the motion will be admitted to trial.  Denial merely means that without the context of

4   trial, the court is unable to determine whether the evidence in question should be excluded." Ind. Ins.

5   Co. v. Gen. Elec. Co., 326 F. Supp. 2d at 846.

6         **B.**     **The Doctrines of *Res Judicata* and Collateral Estoppel**

7         The United States Supreme Court has "consistently emphasized the importance of the related

8   doctrines of *res judicata* and collateral estoppel in fulfilling the purpose for which civil courts have

9   been established, the conclusive resolution of disputes within their jurisdiction." Kremer v. Chem.

10  Const. Corp. 456 U.S. 461 (1982), citing, Allen v. McCurry, 449 U.S. 90, 94 (1980).  The doctrine of

11  *res judicata* precludes parties or their privities from relitigating *claims* that were or could have been

12  raised in a prior action resulting in a final judgment on the merits.  Id.  The doctrine of collateral

13  estoppel precludes relitigation of the same *issues* on a different cause of action between the same parties

14  if a court has decided an issue of fact or law necessary to its judgment.  Parklane Hosiery Co., Inc., v.

15  Shore, 439 U.S. 322, 326 n.5 (1979).  Application of the doctrines of *res judicata* and collateral

16  estoppel relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources and,

17  by preventing inconsistent decisions, encourages reliance on final adjudications.  Allen, 449 U.S. at 94.

18        **1.**     **Claim Preclusion**

19       The doctrine of *res judicata,* or claim preclusion, bars litigation in a subsequent action of any

20  claims that were raised or could have been raised in a prior action.  Owens v. Kaiser Foundation Health

21  Plan, Inc, 244 F.3d 708, 713 (9th Cir. 2001), citing, W. Radio Servs. Co. v. Glickman, 123 F.3d 1189,

22  1192 (9th Cir. 1997) (internal quotations omitted).  "Claim preclusion generally refers to the effect of a

23  prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of

24  the claim raises the same issues as the earlier suit."  New Hampshire v. Maine, 532 U.S. 742, 748

25  (2001).

26       Three tests must be met for the doctrine of claim preclusion to apply.  There must be (1) an

27  identity of claims, (2) a final judgment on the merits, and (3) identity or privity between the parties.  Id.

28  To determine whether there is an identity of claims between the first and second adjudication, the court

1    examines whether the two suits arise out of the same transactional nucleus of facts.  Frank v. United
2    Airlines, Inc., 216 F.3d 845, 851 (9th Cir. 2000) (citation omitted).

3         The parties dispute what, if any, preclusive effect Chief Judge Hunt's order unconditionally
4    granting Hays' habeas corpus petition has in this § 1983 action.  The United States Supreme Court has
5    long recognized the potential overlap between federal court prisoner litigation under § 1983 and the
6    federal habeas corpus statute, 28 U.S.C. § 2254.  Preiser v. Rodriguez, 411 U.S. 475, 488-90 (1973).
7    Both statutes "provide access to a federal forum for claims of unconstitutional treatment at the hands of
8    state officials, but they differ in their scope and operation."  Heck v. Humphrey, 512 U.S. 477, 480
9    (1994).  A federal habeas corpus petition is the exclusive remedy for a state prisoner to challenge the
10   fact or duration of his confinement or to seek speedier release.  Preiser, 411 U.S. at 488-90.  The
11   Supreme Court has repeatedly recognized that § 1983 creates a species of tort liability.  Memphis Cmty.
12   Sch. Dist. v. Stachura, 477 U.S. 299, 305 (1986); Carey v. Piphus, 435 U.S. 247, 257-58 (1978).
13   Section 1983 provides a method of vindicating violation of federal civil rights, but it is not itself a
14   source of substantive rights.  Albright v. Oliver, 510 U.S. 266, 271 (1994).  Thus, the first step in any
15   civil rights case is to identify the specific constitutional rights infringed.  Id.

16        Hays' petition for writ of habeas corpus was brought under 28 U.S.C. § 2254, a provision of the
17   Anti-Terrorism and Effective Death Penalty Act ("AEDPA").  He applied for federal habeas corpus
18   relief on claims that were adjudicated on the merits in state court proceedings.  Federal courts are
19   required to give great deference to state court decisions and should not disturb them unless the state
20   court decision is contrary to clearly established United States Supreme Court precedent.  Davis v.
21   Kramer, 167 F.3d 494, 500 (9th Cir. 1999).  Only if a state court decision resulted in a decision that was
22   "(1) contrary to, or involved an unreasonable application of, clearly established Federal law, as
23   determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on
24   an unreasonable determination of the facts in light of the evidence presented in the State court
25   proceeding" may a federal court grant a writ of habeas corpus.  28 U.S.C. § 2254(d).  Chief Judge Hunt
26   granted Hays' petition for writ of habeas corpus, finding that state court decisions denying him a new
27   trial and upholding his convictions were contrary to or involved an unreasonable application of clearly
28   established federal law and were the result of an unreasonable determination of the facts in light of the

11

1   evidence presented in state court proceedings.  He also found that Hays was factually innocent and that

2   there were egregious violations of his constitutional rights in his criminal prosecution which entitled

3   him to immediate and unconditional release.  The habeas corpus petition successfully challenged Hays'

4   confinement in state custody and resulted in his immediate release.  It did not, however, adjudicate his

5   civil rights claims.

6        In Heck v. Humphrey, 512 U.S. 477, 486-87, the Supreme Court held that a state court prisoner

7   has no cause of action under § 1983 unless and until the conviction or sentence he alleges was

8   unconstitutionally obtained "has been reversed on direct appeal, expunged by executive order, declared

9   invalid by a state tribunal authorized to make such determination, or called into question by a federal

10  court's issuance of a writ of habeas corpus . . . ."  The plaintiffs' § 1983 cause of action did not accrue

11  until Chief Judge Hunt's March 22, 2007 order became a final judgment.  Thus, the doctrine of *res*

12  *judicata*, or claim preclusion, does not apply to the parties' disputes in this § 1983 action because Hays

13  did not, and could not have litigated his § 1983 claims for violation of his civil rights in the habeas

14  corpus proceeding as a matter of well established law.

15            **2.    Issue Preclusion**

16        Collateral estoppel or issue preclusion "prevents relitigation of issues actually litigated and

17  necessarily decided, after a full and fair opportunity for litigation, in a prior proceeding."  Shaw v.

18  Hahn, 56 F.3d 1128, 1131 (9th Cir. 1995).  "The party asserting collateral estoppel must show that the

19  estoppel issue is identical to an issue litigated in a previous action."  Kamilche Co. v. United States,

20  53 F.3d 1059, 1062 (9th Cir. 1995).  Additionally, "the issue to be foreclosed in the second litigation

21  must have been litigated and decided in the first case."  Id., citing, Starker v. United States, 602 F.2d

22  1341, 1344 (9th Cir. 1979) (internal quotations omitted).  The doctrine of issue preclusion prevents

23  relitigation of all issues of fact or law that were actually litigated and necessarily decided in a prior

24  proceeding, not just the particular arguments that were raised in support of the first decision.  Id., citing,

25  Yamaha Corp. of America v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992), cert. denied, 506 U.S.

26  1078 (1993).  The United States Supreme Court has defined the doctrine as follows:

27  / / /

28  / / /

12

1

> Issue preclusion generally refers to the effect of a prior judgment in

2

> foreclosing successive litigation of an issue of fact or law actually
> litigated and resolved in a valid court determination essential to the prior
> judgment, whether or not the issue arises on the same or a different claim.

3

4   New Hampshire v. Maine, 532 U.S. at 748-49.

5          The doctrine of collateral estoppel has the dual purpose of protecting litigants from the burden

6   of relitigating an identical issue with the same party or his or her privity and of promoting judicial

7   economy by preventing needless litigation.  Collins v. D.R. Horton, Inc., 505 F.3d 874, 880 (9th Cir.

8   2007).  A federal court decision has preclusive effect where (1) the issue necessarily decided in the

9   previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding

10  ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted

11  was a party or in privity with the party at the first proceeding.  Kourtis v. Cameron, 419 F.3d 989, 994,

12  (9th Cir. 2005), citing Hydranautics v. FilmTec Corp., 204 F.3d 880, 885 (9th Cir. 2000).

13         Collateral estoppel may be applied offensively or defensively.  Offensive non-mutual collateral

14  estoppel is a version of the doctrine of collateral estoppel that arises when a plaintiff seeks to estop a

15  defendant from relitigating an issue which the defendant previously litigated and lost against another

16  plaintiff.  Appling v. State Farm Mut. Auto Ins. Co., 340 F.3d 769, 775 (9th Cir. 2003), citing, Parklane

17  Hosiery, 439 U.S. at 326.  "Defensive use occurs when a defendant seeks to prevent the plaintiff from

18  asserting a claim the plaintiff has previously litigated and lost against another defendant."  Id. at 322.  In

19  both applications of the doctrine of collateral estoppel "the party against whom estoppel is asserted has

20  litigated and lost in an earlier action."  Collins, 505 F.3d at 881.  However, the Supreme Court has

21  recognized that there are several reasons why offensive collateral estoppel and defensive collateral

22  estoppel should be treated differently.  Parklane Hosiery, 439 U.S. at 329-30.

23         First, offensive use of collateral estoppel is likely to increase rather than decrease the amount of

24  litigation and, therefore, does not promote judicial economy in the same way that defensive use of

25  collateral estoppel does.  Collins, 505 F.3d at 881.  This is because,

26

> Defensive use of collateral estoppel precludes a plaintiff from relitigating

27

> identical issues by merely switching adversaries.  Thus, defensive
> collateral estoppel gives a plaintiff a strong incentive to join all potential
> defendants in the first action if possible.  Offensive use of collateral

28

> estoppel, on the other hand, creates precisely the opposite incentive.

13

1

> Since a plaintiff will be able to rely on a previous judgment against a
> defendant but will not be bound by that judgment if the defendant wins,
> the plaintiff has every incentive to adopt a "wait and see" attitude, in the
> hope that the first action by another plaintiff will result in a favorable
> judgment.

2

3

4   Id.

5       Second, offensive use of collateral estoppel may be unfair to a defendant for a variety of

6   reasons.  For example, a defendant who is sued in a first action for a small amount of damages may lack

7   the incentive to vigorously defend, particularly if future suits are not foreseeable.  Id.  Applying

8   offensive collateral estoppel may also be unfair to a defendant if the prior judgment relied upon as the

9   basis for the estoppel is inconsistent with one or more previous judgments in favor of the defendant.  Id.

10  Additionally, it might be unfair to apply the doctrine of offensive collateral estoppel in a situation

11  where the second action affords the defendant procedural opportunities that were not available in the

12  first action and which could cause a different result.  Id.

13      For these reasons, the United States Supreme Court has given the trial courts broad discretion to

14  determine when the doctrine of offensive collateral estoppel should be applied.  Parklane Hosiery,

15  439 U.S. at 326-31.  In general, the doctrine of offensive collateral estoppel should not be applied

16  (1) where a plaintiff could easily have joined in an earlier action, or (2) when it would be unfair to a

17  defendant.  Id. at 331.

18      It is undisputed that the individual defendants in this case were not parties to the habeas corpus

19  action.  The State respondents in the habeas corpus proceedings were the warden of the prison where

20  Hays was incarcerated and the Director of the Department of Corrections who were defended by the

21  State Attorney General's Office.  The defendants in this case are the state court prosecutor, defendant

22  Moreo, the state detective who investigated the case, Detective Jacobsen, the Former County Public

23  Defender, Morgan Harris, the current County Public Defender, Phil Kohn, and the nurse, Rene Butts,

24  who was a witness at Hays' trial.  Plaintiffs correctly point out that the doctrine of mutuality of parties

25  has been replaced by the doctrine of privity and liberalized in recent years.  Under the mutuality of

26  parties doctrine, neither party could use a prior judgment to collaterally estop another party unless both

27  parties were bound by the same judgment.  Collins, 505 F.3d at 880.  The mutuality of parties doctrine

28  was heavily criticized because it allowed a party who litigated and lost in a previous action an

14

1    opportunity to relitigate identical issues by naming new parties.  "By failing to recognize the obvious

2    difference in position between a party who has never litigated an issue and one who has fully litigated

3    and lost, the mutuality requirement was criticized almost from its inception."  Id.  In Blonder-Tongue

4    Laboratories, Inc., v. Univ. of Ill. Found., 402 U.S. 313, 329 (1971), the Supreme Court abandoned the

5    mutuality requirement in a patent case in which a patentee sought to relitigate the validity of a patent

6    after a federal court in a previous lawsuit had already declared the patent invalid.

7         The plaintiffs seek to preclude the individual defendants in this case from relitigating four

8    specific issues Chief Judge Hunt reached in granting Hays' petition for writ of habeas corpus by

9    invoking the doctrine of offensive non-mutual collateral estoppel.  The four elements which must be

10   found to apply the doctrine of non-mutual collateral estoppel are whether "(1) there was a full and fair

11   opportunity to litigate the identical issue in the prior action; (2) the issue was actually litigated in the

12   prior action; (3) the issue was decided in a final judgment; and (4) the party against whom [collateral

13   estoppel] is asserted was a party or in privity with a party in the prior action."  Syverson v. IBM, 472

14   F.3d 1072, 1078 (9th Cir. 2007) (citations omitted).

15                                          **ANALYSIS**

16        For the reasons set forth below, the court finds that there are a number of issues actually

17   litigated in the prior habeas corpus action that are identical to issues involved in this § 1983 case.  The

18   court also finds that the issues were decided in a final judgment.  However, the court finds that the

19   individual defendants in this case did not have a full and fair opportunity to litigate these issues and

20   were not in privity with the parties to the habeas corpus proceeding.  For these reasons, it would be

21   unfair to the defendants in this case to give issue preclusive effect to the four issues the plaintiffs

22   identify in their opposition to the defendants' motions in limine.

23        The Ninth Circuit relies upon the Restatement of Judgments' factors in determining whether an

24   issue in a successive proceeding is identical to an issue previously litigated.  See Kamilche Co., 53 F.3d

25   at 1062.  These include a determination of whether:

26   / / /

27   / / /

28   / / /

15

(1) there is a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first;

(2) the new evidence or argument involves the application of the same rule of law as that involved in the prior proceeding;

(3) pretrial preparation and discovery related to the matter presented in the first action could reasonably be expected to have embraced the matter sought to be presented in the second;

(4) the claims involved in the two proceedings are closely related.

Id.

The plaintiffs' Amended Complaint (#33) attaches and incorporates by reference Chief Judge Hunt's March 22, 2007 order granting his petition for writ of habeas corpus and ordering his immediate and unconditional release.  The plaintiffs' opposition to the defendants' motions in limine identifies the issues to be litigated in this case, which were litigated and decided by Chief Judge Hunt in the habeas corpus proceeding and which the plaintiffs seek to preclude the defendants in this case from relitigating.  First, plaintiffs claim defendants should be precluded from relitigating Hays is factually innocent of the charges against him.  Second, the defendants should be precluded from relitigating that Hays was deprived of his due process rights under the Fifth and Fourteenth Amendments by six specific acts or omissions by defendants Moreo and Jacobsen.  Third, the defendants should be precluded from relitigating that Hays was deprived of his Sixth Amendment right to counsel by the ineffective assistance of his counsel, and due to a substandard practice policy at the Public Defender's Office which deprived Hays of his right to present a defense because his Deputy Public Defender did not retain an expert witness.  Fourth, the defendants should be precluded from relitigating that Hays was deprived of his due process rights at trial by a myriad of constitutional errors in the trial itself.

Applying the four factors identified by the Ninth Circuit in Kamilche, it is clear that there are a number of issues litigated in the habeas corpus proceeding that are identical to issues that will be litigated in this case.  Chief Judge Hunt's order clearly found that Hays was factually innocent, and deprived of his due process rights under the Fifth and Fourteenth Amendments on each of the six sub-issues Hays relies upon in this case to prove his civil rights were violated.  These issues are identical to, and were actually litigated in the habeas corpus proceeding.  Chief Judge Hunt also found that Hays was deprived of his Sixth Amendment right to counsel and received ineffective assistance of

16

counsel because of the deficient performance of his trial counsel.  This issue is identical to and was actually litigated in the habeas corpus proceeding.  However, in this civil action, Hays clearly is attempting to assert broader violations of his Sixth Amendment rights by alleging there were policies and procedures of the Public Defender's Office which deprived him of effective assistance of counsel which were not necessarily part of Chief Judge Hunt's findings in the habeas corpus proceeding.

The court flatly rejects the arguments advanced by counsel for Clark County that Chief Judge Hunt's findings on these four issues were mere *dicta* or only "tangentially related" to the constitutional issues to be litigated in this case.  The court also rejects Clark County's argument in a footnote in the reply that none of the issues the plaintiffs identify in their opposition as to which collateral estoppel should apply were necessary to Chief Judge Hunt's decision and order in the habeas corpus proceeding. Chief Judge Hunt articulated the legal standard he was required to apply before granting his habeas corpus petition.  While finding that Hays had demonstrated his actual innocence by clear and convincing evidence, Chief Judge Hunt recognized that Hays was ineligible for habeas corpus relief from federal court on this ground alone.  To grant the writ, Chief Judge Hunt was required to make findings that Hays' state court conviction was the result of a decision that was contrary to or involved an unreasonable application of clearly established law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. He methodically examined each of the eight grounds for relief Hays raised in his petition and made findings of facts and conclusions of law on each of the grounds for federal habeas corpus relief.

Although the court concludes that there are identical issues involved in this civil action which were actually litigated to final judgment in the habeas corpus proceeding, the court also finds that the defendants in this case lacked a full and fair opportunity to litigate these issues, and were not in privity with the state defendants in the habeas corpus proceeding.

The court is mindful of the extraordinary nature of Chief Judge Hunt's decision and order, finding that Hays had been wrongfully convicted of heinous offenses for which he was actually and factually innocent.  The court is also mindful that Hays was required to establish his habeas corpus claims by clear and convincing evidence and that his burden of proof in this § 1983 action is only by a preponderance of the evidence.  Recognizing the extraordinary nature of the habeas corpus relief and

1   the different burden of proof which apply to both types of actions, the court must nevertheless consider

2   the defendants' due process rights.  The defendants in this civil case have simply not had a full and fair

3   opportunity to litigate the plaintiffs' claims and to defend themselves against allegations they violated

4   Hays' constitutional rights.  The individual defendants here were not represented by counsel in the

5   habeas corpus proceeding, and they had no ability to control the habeas corpus action being defended by

6   the State Attorney General's Office on behalf of the State defendants.  The individual defendants in this

7   case also did not enjoy the procedural opportunities to conduct discovery that this civil litigation affords

8   them.

9          During oral argument, counsel for Hays acknowledged that all of the defendants in this case are

10  not similarly situated for purposes of a finding they are in privity with the State respondents in the

11  habeas case.  However, counsel twice declined the court's invitation to identify which defendants

12  plaintiff contends are most clearly in privity with the State respondents.  The court finds that Kohn,

13  Harris, and Butts had no direct or individual interest in the outcome of the habeas case.  Indeed, there is

14  no evidence in the record before me to find that Kohn, Harris, or Butts were even aware of any claim

15  Hays made in the habeas proceeding that they violated his constitutional rights.  The State Attorney

16  General took the position in the habeas corpus case that Hays received effective assistance of counsel.

17  However, Ground Five of Hays' amended petition did not raise any claims with respect to policies and

18  procedures of the County Public Defender's Office which were alleged to have deprived Hays of his

19  Sixth and Fourteenth Amendment rights to effective assistance of counsel.  Kohn and Harris find

20  themselves named in this civil rights action apparently because of testimony given the Deputy Public

21  Defender who defended Hays in the criminal trial, and there is no indication that Kohn or Harris were

22  even aware of his testimony.  With respect to Nurse Butts, both sides in the habeas corpus case retained

23  experts who offered opinions that Butts' trial testimony was not medically supported.

24         Counsel for Hays argued at the hearing that Moreo and Jacobsen had every incentive to defend

25  themselves against Hays' claims, actually testified and could have asked to review the state court record

26  before testifying.  Therefore, Moreo and Hays had a full and fair opportunity to litigate and defend

27  themselves.  Although defendants Moreo and Jacobsen certainly had some incentive to defend the

28  validity of the underlying criminal conviction, they lacked the same incentive to defend themselves as

1  they do in this civil case.  Hays had unsuccessfully litigated his claims in state court for many years.

2  His convictions had been affirmed, and his post-conviction relief petitions denied on many of the same

3  claims he successfully prevailed upon in the federal habeas corpus proceeding.  As counsel for plaintiff

4  acknowledged during oral argument, it is extraordinary for a federal court to overturn a state court

5  conviction in a habeas corpus proceeding based in part on a defendant/petitioner's actual innocence.  As

6  Chief Judge Hunt's order found, Hays was ineligible for federal habeas corpus relief on grounds of his

7  actual innocence alone.  In light of the number of prior times the state court had affirmed Hays'

8  convictions and rejected his claims of constitutional errors, these defendants lacked the same incentive

9  to defend their actions in the federal habeas corpus case that they have in defending themselves against

10  his civil claims here.

11       As the prosecutor and lead detective in the case, Moreo and Jacobsen had some incentive to see

12  that Hays' conviction was upheld, but their interests in the habeas corpus proceeding were much less

13  compelling and personal than the interests at stake in this civil case.  Prosecutor Moreo and Detective

14  Jacobsen are now individually named defendants being sued by a plaintiff they successfully prosecuted

15  as a defendant whose request for a new trial had been denied, and whose convictions had been upheld

16  on direct appeal and in subsequent post conviction relief proceedings.  Under these circumstances, and

17  after fourteen years, Moreo lacked sufficient incentive to refamiliarize himself with the voluminous

18  state court record on a case he prosecuted many years prior for this court to find that he had a full and

19  fair opportunity to litigate identical issues raised in this action because he could have asked the

20  Attorney General's Office for access to the file to review it before testifying.

21       Additionally, none of the individual defendants in this case are in privity with the state

22  defendants who were respondents in the habeas corpus action.  Privity is a legal conclusion which

23  deems a person so identified in interest with a party to former litigation that he represents precisely the

24  same right in respect to the same subject matter involved.  United States v. Schimmels, 127 F.3d 875,

25  891 (9th Cir. 1997) (internal quotations omitted).  Because this nation recognizes a "deep-rooted

26  historical tradition that everyone should have his own day in court," collateral estoppel does not apply

27  merely because the same issue is raised in successive suits.  Headwaters, Inc., v. U.S. Forest Serv., 399

28  F.3d 1047, 1050 (9th Cir. 2005) (internal quotations omitted).

1    There are due process limits to the concept of privity.  "It is a violation of due process for a

2    judgment to be binding on a litigant who was not a party or in privy and therefore has never had an

3    opportunity to be heard."  Parklane Hosiery, 439 U.S. at 327.  The Supreme Court has repeatedly

4    emphasized that "it would violate Due Process Clause . . . to bind litigants to a judgment rendered in an

5    earlier litigation to which they were not parties and in which they were not adequately represented."

6    Richards v. Jefferson County,  517 U.S. 793, 794; see also Blonder-Tongue Labs, 402 U.S. at 329

7    (holding due process prohibits estopping litigants who have never appeared in a prior action from

8    litigating an issue despite one or more existing adjudications of the identical issue).  The concept of

9    privity has been traditionally limited to well defined categories of relationships.  Kourtis, 419 F.3d

10   at 996.  Examples include co-owners and co-tenants of property, assignors and assignees, and

11   indemnitors and indemnitees.  Id.  Although recent cases apply the privity concept in a much more

12   flexible manner, identity of interests and adequate representation are necessary to a finding of privity.

13   Id., citing Irwin v. Mascott, 370 F.3d 924, 930 (9th Cir. 2004).  Or, as the Ninth Circuit stated,

14   "adequacy of representation [is] the sine qua non of any privity relationship."  Id. at 997 n.5.  Moreover,

15   "parallel legal interests alone, identical or otherwise, are not sufficient to establish privity."

16   Headwaters, 399 F.3d at 1054.

17   The court finds it would violate these defendants' due process rights to bind them to the final

18   judgment in the habeas corpus proceeding to which they were not parties, nor in privity with the state

19   habeas corpus respondents.  These defendants did not have separate counsel and their civil interests

20   were not represented by the State Attorney General's Office which was defending the validity of Hays'

21   underlying criminal convictions.  These defendants have not had the opportunity to present their

22   evidence and arguments on the plaintiffs' claims and have not had a full and fair opportunity to defend

23   themselves from allegations they violated the plaintiffs' civil rights.  It would, therefore, be unfair to

24   give issue preclusive effect to Chief Judge Hunt's order granting Hays' petition for writ of habeas

25   corpus, and the court will not exercise its discretion to apply the doctrine of offensive collateral

26   estoppel to them.

27   However, the relief the defendants request in their motions in limine is too broad.  The court

28   cannot determine at this early stage of the litigation that the order in whole or in part is inadmissible on

20

1    all potential grounds.  At a minimum, the order is admissible to show Hays' state court convictions

2    were invalidated by a federal writ of habeas corpus.  Any other use of the order at trial is properly

3    deferred until the time of trial when questions of foundation, relevancy, and potential prejudice may be

4    resolved in proper context.  Additionally, Clark County's request for an order precluding any use of the

5    order in discovery, at depositions, or in pretrial motion practice is overbroad.  Accordingly, the court

6    will deny Clark County's motion in limine to the extent it seeks an order precluding the plaintiffs from

7    citing, quoting, or otherwise referring to it in discovery, during depositions and/or at trial.  The court

8    will also deny defendants Kohn and Harris' motion in limine to the extent it seeks to preclude any use

9    of the order as evidence on any issue or fact.

10       For all of the foregoing reasons,

11       **IT IS ORDERED:**

12       1.    Clark County's Motion in Limine to Preclude Reference to March 22, 2007 Order on

13             Petition for Writ of Habeas Corpus (#84) is GRANTED in part and DENIED in part

14             consistent with the provisions of this order.

15       2.    Defendants Philip Kohn and Morgan and Harris' Motion in Limine to Preclude Use of

16             March 22, 2007 Order on Petition for Writ of Habeas Corpus (#85) is GRANTED in part

17             and DENIED in part consistent with the provisions of this order.

18       Dated this 6th day of June, 2008.

19

20                                              _____

21                                              PEGGY A. LEEN
                                                UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28